**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: May 15 2014**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 13-31005 |
| | ) | |
| Fremont Hospitality Group, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

<u>**MEMORANDUM OF DECISION RE APPLICATION FOR ADMINISTRATIVE EXPENSES**</u>

This case is before the court after hearing on the Application for Compensation For Services Rendered and Expenses [Doc. # 230] ("Application") filed by Donald Harris, Attorney for Debtor ("Attorney Harris"). The Application seeks approval of fees as compensation in the amount of $16,143.75, for services rendered before conversion of this case from Chapter 11 to Chapter 7, and reimbursement of expenses totaling $220.00 as an administrative expense of the superseded Chapter 11 case. *See* 11 U.S.C. §§ 330(a), 503(b)(2), 726(b).

This case started out as the Debtor's third Chapter 11 case in a year. S*ee* Case Nos. 12-31969 [filed April 25, 2012 and dismissed August 10, 2012] and 12-34424 [filed September 28, 2012, and dismissed February 2, 2013]. Attorney Harris commenced it as a bare bones Chapter 11 by filing just the petition and a creditor's list on March 15, 2013.

In seeking approval of his employment as attorney for the Debtor and Debtor-in-Possession, Attorney Harris filed an application representing that he had not received any retainer or funds from Debtor

for fees and that Debtor had paid the filing fee. [Doc. # 5, para. 15]. But the original filing fee payment was declined as being made from a frozen account. [Doc. # 25]. The application to employ Attorney Harris also represented to the court that his hourly rate was $200. [Doc. #5, para. 14 and Ex. A, para. 1(dated over 4 months before filing)]. Even after the court required, [Doc. # 58], and Attorney Harris filed (twice), [Doc. ## 69 and 70], an amended application with a current disinterestedness statement-- this time indicating an hourly rate of $250.00 but both repeating that no retainer was paid [Doc. # 70, compare p. 4. para. 15 with p.6 with p. 7 para. 5 with p. 12 para 9 and Doc. # 230], and stating that a retainer had been transferred from one of the prior cases-- his employment was never approved by the court.[1] While that appears to be an administrative oversight and would be alone grounds for denying the Application, the court denies it, but not on that basis. Even had his employment been approved, the court does not find the requested compensation to be reasonable under § 330 for the reasons stated on the record by the court at the hearing and as otherwise summarized below.

The history of this case as shown by the record, all of which the court relies upon in making this decision, is tortured. The case will ultimately be costly even apart from the fees sought by Attorney Harris. Its history includes the record of the prior two failed Chapter 11 cases of which the court takes judicial notice. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it). It also includes Debtor's repeated inability to proceed seriously with a plan of reorganization; appointment of a trustee; closure of the hotel's business operations under emergency circumstances that put the public at risk due to a lack of insurance and that were in place from the very commencement of this case; and, ultimately, conversion to Chapter 7. The ultimate responsibility for these failed outcomes falls on Debtor's conflicted principal, Annie Kolath (" Ms. Kolath"), who also asserts that she is its largest secured creditor. But the court finds that they could not have occurred without counsel's inadequate investigation, questioning and compilation of information from Ms. Kolath and Debtor before, during and after commencement of the cases. The inquiries of Ms. Kolath and the timing thereof shown on

---

[1]No order granting the Application was ever submitted to the court by counsel through the court's CM/ECF E-orders submission program. *See* United States Bankruptcy Court, Northern District of Ohio, Electronic Case Filing (ECF) Administrative Procedures Manual, Part II.F. (link to Procedures Governing Submission of Proposed Orders April 2013)(court website). A proposed form of order is attached to the original application to employ, but is not useable by the court in that format, as counsel, who is experienced in practice before this court, is aware.

the fee statement accompanying the Application emphasize and evidence this shortcoming. [*See* time entries on 3/18/13; 3/22/13(2); 4/1/13; 4/9/13; 4/17/13; 5/17/13; 7/12/13].

All three of Debtor's cases, and this one in particular, have been marked by Attorney Harris trusting but not verifying from his client, a particular problem given the multiple conflicting hats worn by Ms. Kolath, mostly incompatible with supporting the role of the Debtor and Debtor-in-Possession as a fiduciary in a Chapter 11 case. *See* Fed. R. Bankr. P. 9001(5). Glaring examples, but not by any stretch the only ones, include: the lack of insurance coverage on the Debtor's hotel property, housing a swimming pool and a bar, and its business operations dating back to the second Chapter 11 case; incorrect identification of the Debtor on the initial petition; a motion for use of cash collateral that was incomprehensible, identified no party with an interest in cash collateral and bore no relationship to the Debtor's actual apparent business operations [*see* Doc. # 9]; proceeding with outdated, half-baked and incomprehensible corporate authorization documents of questionable validity [Doc. ## 2-4]; the quest back to the first case to ferret out the on again, off again, may or may not exist operating lease or contract for the hotel business and property between Debtor and a johnny come lately insider entity apparently owned and run by Ms. Kolath called Mt. Merino Properties [*cf.* Doc. # 28, pp. 3/13, 6/13, 11/13 and Claim # 10-1];[2] the unexplained and inexplicable omission of the hotel operations franchisor Choice Hotels [*see* Claim # 11-1] from the schedules in all three cases and the ubiquitously absent franchise agreement, [*see* Doc. # 158]; obtuse and unreliable financial reports; wholly insufficient disclosure and plan documents; and the "NSF" filing fee in this case.

That Attorney Harris agreed to act as attorney for Debtor again under the circumstances -- still without having the alleged Mt. Merino Properties operating lease or a franchise agreement finally in hand, without insisting on payment of rent allegedly due from Ms. Kolath's alleged entity to the Debtor that left the Debtor without any cash, and without seeing a binder of insurance before bringing the Debtor back into

---

[2] Despite representations on the record and orders for production after the existence of the lease was reported at status conferences with the court in the prior two cases, time entries on May 7, 13 and 16, 2013, in the Application suggest that the document may have been drafted and signed post-petition in this case. *See* Doc. # 46, Schedule G Executory Contracts and Unexpired Leases with box marked none (Case No. 12-31969); Doc. # 28, (Case No. 12-31969 [entity misnamed by court as "Mountain Arena" in order for production of lease]); Doc. # 14, Schedule G Executory Contracts and Unexpired Leases listing "lease of operating Hotel" with Mount Merino Properties, Inc. (Case No. 12-34424); Doc. #16 (Case No. 12-34424[entity named correctly by court in order for production of lease]); Doc. # 28, Schedule G Executory Contracts and Unexpired Leases listing "lease of operating Hotel" with Mount Merino Properties, Inc. (Case No. 13-31005). Given the representations of the operating arrangements for the Debtor's hotel facility and the existence of the lease made by Ms. Kolath and Attorney Harris, as well as the court's focus thereon, in the prior two cases, the court does not understand why Attorney Harris commenced this third case without actually having a written document in hand from his client.

3

this court for the third time in the position of a hobbled fiduciary to its estate and its creditors-- compels the court to find that the services rendered for which compensation is sought were not beneficial to the Debtor or the estate toward the completion of a Chapter 11 case at the time rendered, nor were they ever likely to benefit the Debtor's estate. *See* 11 U.S.C. Sec. 330(a)(3)(C), (4)(A). Simply put, this case should not have been commenced under circumstances that this third time spiraled rapidly and expensively downward into Chapter 7 because it lacked a reasonable prospect of success as a Chapter 11 case at the time it was filed.

The court does not doubt that Attorney Harris and his staff did what he said they did in the Application; the documents minimally required to proceed were eventually facially prepared and filed with the court, albeit of questionable accuracy. But the role of Debtor's counsel goes beyond those mechanical actions in critical ways that were not met here. *In re Needham*, 279 B.R. 519, 522 (Bankr. W.D. La. 2001); *In re Texasoil Enters.*, 296 B.R. 431 (Bankr. N.D. Tex. 2003); *In re Count Liberty, LLC,* 370 B.R. 259, 281-82 (Bankr. C.D. Cal. 2007). Tellingly, upon appointment of the Chapter 11 Trustee, Attorney Harris had extremely limited documents and information in his possession to turnover to her and her professionals. [*See* Doc. # 158]. Immediately after appointment of the Chapter 11 Trustee, and before he filed a motion to withdraw, [*see* Doc. # 161], Attorney Harris filed seven objections to claims on behalf of the Debtor. [Doc. ## 130-136]. Ultimately, however, all of the objections were withdrawn or denied for want of prosecution. The court cannot award compensation as and at an administrative expense to Debtor's creditors for services that they were never going to benefit from under all of the circumstances present from the very beginning of the case. *See In re Lederman Enterprises, Inc.*, 997 F.2d 1321 (10th Cir. 1993); *In re Universal Factoring Company, Inc.*, 329 B.R. 62, 82-84 (Bankr. N.D. Okla. 2005). The court finds that the services detailed in Exhibit A to the Application were, from the outset, not reasonably likely to benefit the Debtor's estate. *See* 11 U.S.C. § 330(a)(4)(A).

That leaves the issue of whether Attorney Harris was paid a retainer. Paragraph 15 of the original application to employ him states that "Harris has received $00.00 for fees. The Court's filing fee was paid directly from the Debtor. The sum of $00.00 was applied to pre-petition services. The balance of $0 will be used as a retainer for services. Harris has $0.00 in unpaid fees an expenses." [Doc. # 5, ¶ 15]. The affidavit attached to the application to employ states that Attorney Harris was paid $1,000.00 in the 90 days preceding the case and that "Harris holds $0 on retainer for Debtor." [Doc. # 5, Ex. A, ¶ 9]. Attorney Harris' first Rule 2016 Compensation Disclosure contradictorily states in paragraph 2 that the "Amount of

retainer received" was "$00.00" and in paragraph 5 that a "retainer [no amount identified] has been paid and transferred from the Debtor's previously filed bankruptcy proceeding, case no. 12-31969." [Doc. # 12]. A second Rule 2016 Disclosure of Compensation filed on April 2, 2013, states that prior to its filing Attorney Harris had received nothing. [Doc. # 31]. Attorney Harris's Amended Application to employ him, filed on April 30, 2013, contains the same paragraph 15 as the original, stating that no funds had been received by him and that no retainer was paid [Doc. # 69, ¶ 15], along with the a copy of the first Rule 2016 Disclosure of Compensation stating both that no retainer had been paid and that a retainer in an unspecified amount was transferred from the previous Chapter 11 case. Another copy of what appears to be the same document was filed again on May 1, 2013. [Doc. # 70].

The Application states, however, that Attorney Harris "received $5,000 as retainer prior to the filing of the case and that amount was returned as insufficient and replaced after the filing of the case for compensation in fees for legal consultation and services provided prior to the commencement of these proceedings." [Doc. # 230, p. 1/3]. Except for one hour of services rendered on March 9, 2013, all of the time entries comprising the attached fee statement are for services rendered on and after the March 15, 2013, petition filing date. [Doc. # 230-2, pp.1-4]. The Application's request for relief asks "this court for an order allowing total fees in the amount of $ 16,143.75 with $3,787.00 to be paid through the balance of the retainer and $12,356.75 to be paid through distribution from the assets or Chapter 7 liquidation, for representation of the Debtor in these proceedings." This prayer for relief shows that the retainer was intended from Attorney Harris's perspective to be applied to allowed fees for post-petition services, not pre-petition services. The $3,787.00 amount is $5,000.00 less the filing fee amount of $1,213 that was paid after the debit was first rejected.

The circumstances of the pre-petition payment of a $5,000 retainer to Attorney Harris that was dishonored were not previously disclosed and should have been. 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2014(a) and 2016(b); *Neben & Starrett v. Chartwell Fin. Corp. (In re: Park Helena Corp.)*, 63 F.3d 877 (9th Cir. 1995) (disclosure of retainer required under Rule 2014 in employment application); *In re Glenn Elec. Sales Corp.*, 99 B.R. 596 (D.N.J. 1988)(disclosure of compensation arrangement as required in employment application includes disclosure of any retainer received by the professional); *see In re Downs,* 103 F.3d 472 (6th Cir. 1996)(Chapter 7 case: complete disclosure of fee arrangements by debtors' counsel required); *In re Kisseberth,* 273 F.3d 714, 720 (6th Cir. 2001)(Chapter 7 case: attorney in a bankruptcy case has an affirmative duty to disclose fully and completely all fee arrangements under § 329 and Rule 2016(b)).

5

*But cf.* Doc. ## 12, 31 and employment applications. Notwithstanding the lack of timely required disclosure of the fact of the retainer, its amount and the source of the funds, the court finds from the Application and the prayer for relief that Attorney Harris received a $5,000 retainer payment. The court accepts that the filing fee of $1,213 was ultimately paid out of this retainer. Therefore, the amount Attorney Harris has on hand as a retainer, as represented in the Application, but not otherwise disclosed, is $3,787.00. Also, the Application shows additional expenses of $220 for copying documents turned over to the Chapter 11 Trustee. This is a reasonable and necessary expense of administration and transition from the status, at the time, of Debtor-in-Possession to Trustee. Counsel may therefore deduct this amount from the balance of $3,787.00 on hand, leaving the additional amount of $3,567.00.

As the court has determined that Attorney Harris is not entitled to any compensation under § 330, the $3,567.00 amount of the retainer remaining after deduction of the filing fee and the allowed expenses may not be retained and applied by Attorney Harris. *See also* 11 U.S.C. § 329(b).[3] Instead, the remaining amount of the retainer shall be paid by Attorney Harris over to Chapter 7 Trustee Ericka S. Parker. Trustee Parker shall investigate the source of the funds and determine the proper disposition thereof as property of the estate or otherwise. *Id.* Attorney Harris must cooperate with the Chapter 7 Trustee's investigation.

The court will enter a separate order in accordance with this memorandum of decision.

### 

---

[3]The failure to disclose properly the retainer under Rule 2016(b) is also a basis for denial of compensation. *See In re Downs*, 103 F.3d at 477-78 (noncompliance with § 329(a) and Rule 2016(b) disclosure requirements merited sanction of disallowance of compensation and disgorgement of amounts paid); *In re Kisseberth*, 273 F.3d at 720-21. However, such a denial would be treated as a sanction and not a denial of compensation under § 330. To be clear, the court is not denying compensation to Attorney Harris as a sanction.

6